IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **AQILLA HOGAN-ROGERS,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | **CAUSE NO. 4:19-CV-4697** |
| ) | |
| ) | **JURY TRIAL REQUESTED** |
| **MCDONALD'S CORPORATION,** ) | |
| ) | |
| *Defendant.* ) | |

## ORIGINAL COMPLAINT AND JURY REQUEST

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW, Aqilla Hogan-Rogers ("Plaintiff"), complaining of and about McDonald's Corporation ("Defendant"), and for cause of action will respectfully show unto this Court the following:

### PARTIES AND SERVICE

1. Plaintiff is a citizen of the United States of America and the State of Texas and currently resides within this Court's District.

2. McDonald's Corporation ("Defendant"), is Plaintiff's former employer and is a foreign for-profit corporation doing business in the State of Texas, and within this Court's District, and can be served through its registered agent for service of process, Prentice Hall Corp. System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

### JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over the Texas state law claims discussed below under 28 U.S.C. §1376(a) because the claims arise out of the same case or controversy.

5. All parties are subject to personal jurisdiction in the Southern District of Texas. Defendant made itself subject to this Court's jurisdiction by maintaining a physical presence and business operations in this District.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because Defendant resides in this District and the events underlying her claim occurred in this District.

## NATURE OF THE ACTION

7. This is an action brought pursuant to §1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights of 1964, 42 U.S.C. Section 2000e *et. seq.* and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 ("Title VII"), The Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12112 and §12203, and the §21 of the Texas Labor Code, on the basis that Plaintiff was discriminated against because of her race (African-America), and a perceived disability (pregnancy), and Defendant denied Plaintiff reasonable accommodations. Defendant also retaliated against Plaintiff for engaging in conduct protected by Title VII and the ADA. Defendant's termination of Plaintiff also violated the Texas Labor Code.

## CONDITIONS PRECEDENT

8. All conditions precedent to jurisdiction have occurred or been complied with. Plaintiff filed a charge of discrimination within one hundred and eighty days (180) or three hundred days (300) of the acts complained of herein, and the Plaintiff's Original Complaint is filed within ninety (90) days of Plaintiff receiving the EEOC's Notice of Right to Sue. **Exhibits A & B**.

2

**CAUSE OF ACTION**
**COUNT 1 – RACE AND SEX/GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

9. Plaintiff was employed at Defendant's restaurant located at Hwy 21 E., Bryan, Texas and later at the company's restaurant in Navasota, Texas, between 2011 and August 2016, when she was terminated. Plaintiff is an African-American female.

10. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of sex (her gender) and race.

11. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, in violation of Title VII.

12. For example, Plaintiff's supervisor and area manager for her restaurant was a Hispanic male, Ramon Bolivar. His actions showed a bias / hostility towards African-American women. Mr. Bolivar tended to fire African-American employees and replace them with Hispanic employees. He also frequently humiliated his female employees by making comments such as, "you are fat, you are ugly, wear some makeup," while treating male employees with respect and dignity. Mr. Bolivar once told Plaintiff, he "could not stand black women, especially the ones who put money in their nasty, sweaty breasts."

13. In addition, in August 2015, while Plaintiff was a general manager of, she asked Mr. Bolivar for additional staffing because Mr. Bolivar expected her to run the restaurant in a severely understaffed condition. When her counterpart at another McDonald's restaurant agreed to sharing some of his employees with her, allowing them to be scheduled between the two stores. Mr. Bolivar disallowed this, for no reason.

14. Additionally, male general managers working for Defendant's restaurants located at the Bryan-College Station location, for which Mr. Bolivar was responsible, were compensated significantly more than female general managers. During Plaintiff's work for Defendant, her

3

overall compensation was mot comparable to that of any of her male colleagues doing the same work.

15. Other instances of discrimination and disparate treatment that Plaintiff experienced are included in her EEOC charge statements, which are attached hereto as Exhibit A, and incorporate herein by reference, as if fully set forth here.

16. Defendant's behavior was motivated by discriminatory motives. Defendant's behavior was part of a continuous pattern and sequence of events that cumulated to create disparate and discriminatory effect on Plaintiff. Because of Defendant's discriminatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violation of Title VII, and for which Defendant is liable.

### COUNT 2 – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

17. Defendant is a covered employer to which the ADA applies. During her tenure with Defendant, Plaintiff was pregnant on two occasions. Her gender and pregnant condition placed her in a federally protected class under the ADA. During the course of her employment, up to and including her termination, Defendant violated the ADA by failing to accommodate requests for reasonable accommodations, and further increasing her work duties and work load after receiving those accommodation requests.

18. Plaintiff's pregnancies were high-risk pregnancies that ultimately ended with the deaths of her children shortly after birth. Because, her high risk pregnancies limited at least one of Plaintiff's major life activities episodically, Plaintiff is an individual with a disability under the ADA.

19. Alternatively, because Plaintiff was perceived by Defendant as having a disability, Plaintiff is an individual with a disability under the ADA.

20. Plaintiff was fully qualified for her positions held during the times she was pregnant and was able to perform all of the ordinary and essential functions of the position.

21. Plaintiff requested several accommodations from the Defendant due to her high risk pregnancies. On each occasion, Defendant failed or refused to accommodate her, and in some instances increased her work load and duties after receiving her requests.

22. For example, in 2014, Plaintiff informed her then supervisor Josh Winters that she was pregnant and that it was a high-risk pregnancy. However, instead of providing reasonable accommodations for Plaintiff, such as scheduling her for light duty tasks, Mr. Winters increased her duties, requiring her to assume the responsibilities of the maintenance technician upon his leaving the company in December 2014. She was required to physically unload the food delivery trucks, carry food supplies inside the restaurant, clean the entire restaurant and to perform all other heavy physical duties which she could not do safely because of her high-risk pregnancy.

23. In December 2014, while on vacation and resting, Mr. Winters called Plaintiff and ordered her to come in to cover the duties of another employee who suddenly quit, despite that fact that there were other employees that could have covered the quitting employee's work.

24. In February 2015, Plaintiff was required to work 14 hours straight on her feet although she was 27 weeks pregnant. During that time, due to her heavy work load and standing on her feet all day, she experienced complications with her pregnancy.

25. In February 2015, the restaurant had a plumbing problem and water flooded the restaurant. Plaintiff had to perform the physical task of dumping out heavy buckets of water. During this time period, Plaintiff lost her baby.

26. In July 2015, I advised Mr. Bolivar, my then supervisor and the Area Manager of the Bryan-College Station area, that she was pregnant again. She explained to Mr. Bolivar that this

second pregnancy, like her first, was a high-risk pregnancy. After losing her first baby and believing it due to her heavy workload during her pregnancy, Plaintiff expected Defendant to provide reasonable accommodations for her, such as reducing her work load or scheduling her for light duty tasks. However, Defendant again failed to provide reasonable accommodations to Plaintiff.

27. Plaintiff made complaints to Mr. Bolivar on numerous occasions, and requested additional staffing to address the severe manpower shortage at her restaurant. But, among other things, Mr. Bolivar refused to allow her to bring on additional staff to address the severe manpower shortage at her restaurant. Mr. Bolivar simply ignored her requests, did not support her as her manager, and required her to perform manual Labor constantly.

28. At 32 weeks pregnant, Plaintiff had an emergency C-section on January 13, 2016. Her baby could not survive and on January 14, 2016, she lost her second child.

29. Defendant could have made reasonable accommodations that would have enabled Plaintiff to perform the essential functions of the job, without risk to her and her unborn child physically. Defendant did not provide reasonable accommodation. Defendant's behavior was part of a continuous pattern and sequence of events that violated the ADA. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm, that were the direct and proximate result of Defendant's violations of the ADA, and for which Defendant is liable.

### COUNT 3 – PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

30. Plaintiff incorporates paragraphs 1-29 by reference as if set forth fully here.

31. At the time of the events outlined above, Plaintiff was a pregnant female. Her gender and pregnant condition placed her in a federally protected class under Title VII. During the

6

course of her employment, up to and including her termination, Plaintiff was subjected to discrimination at her workplace because Defendant treated her in an unfavorable manner that differed from its treatment of other non-female, non-pregnant general managers under the same circumstances, and thereby treated her unequally in the terms and conditions of her employment, because she was pregnant.

32. The behavior of Defendant's supervisory employees, for which Defendant is liable, was motivated by discriminatory animus. Because of Defendant's discriminatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violations of Title VII, and for which Defendant is liable.

### COUNT 4 – RETALIATION IN VIOLATION OF TITLE VII AND THE ADA

33. In early June 2016, only two months after Plaintiff returned from an approved FMLA leave, an accident that occurred that lead to the closure of the restaurant for approximately three days due to a fire in the restaurant. Right after the fire, on June 28, 2016, representatives of Defendant's Corporate Office visited the Navasota restaurant. During this visit, Plaintiff was singled out and reprimanded for allegedly violating the security alarm policy. However, the alarm violation was the directly caused by Mr. Bolivar, not me. A few weeks before the corporate representatives' visit, Mr. Bolivar told the entire work team that he would be buying batteries for the alarm system at the restaurant. Trusting Mr. Bolivars word, since he was her supervisor, Plaintiff waited for Mr. Bolivar to provide the batteries. However, during the corporate visit when the issue was raised, Plaintiff was singled out and only Plaintiff was reprimanded among the general managers for not having a new battery in the store's alarm system.

34. After the corporate visit, Mr. Bolivar fired or suspended most of the employees working at the restaurant and told Plaintiff that she had 45 days to put the restaurant together.

Plaintiff had to work more than 12 hours daily, with no help, and was not compensated with overtime-rate pay. Plaintiff complained about this and similar unfair treatment on multiple occasions to her supervisors.

35.     On July 27, 2016, just a week before she was terminated, Mr. Bolivar attempted to write up Plaintiff for another incident that was not her fault, and for which another employee, Mr. Kitely, had already been reprimanded and written up. Plaintiff disagreed with, questioned, and complained about being written up in this circumstance. Plaintiff believes that Defendant was trying to find a pretextual reason to fire her.

35.     Finally, on July 28, 2016, Plaintiff emailed Mr. Bolivar, and two other supervisory employees of Defendant, and complained about the lack of help from Mr. Bolivar once again. Plaintiff was hoping that the discrimination against her would be addressed and she would be given the same level of staffing and help as her similarly situated, non-African American colleagues. However, instead, on August 4, 2016, Defendant retaliated against her for engaging in protected activity multiple times (lodging complaints about race and sex discrimination, lack of help and staffing, failure to accommodate her during her high-risk pregnancies, and questioning whether she should be paid overtime pay) by terminating her employment.

36.     Because of Defendant's discriminatory and retaliatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violation of Title VII and the ADA, and for which Defendant is liable.

### COUNT 5 – DISCRIMINATION VIOLATING TEXAS LABOR CODE §21.051

37.     Plaintiff incorporates by reference paragraphs 1-36 as if set forth fully here.

38.     Defendant's discriminatory treatment of Plaintiff also violated the Texas Commission on Human Rights Act, Texas Labor Code §21.051(1), which provides, in pertinent

part that "An employer…commits an unlawful employment practice if because of race…disability…sex…discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment."

39. Because of Defendant's discriminatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violations of the Texas Labor Code, and for which Defendant is liable.

### COUNT 6 – RETALIATION VIOLATING TEXAS LABOR CODE §21.055

40. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

41. Defendant intentionally retaliated against Plaintiff by terminating Plaintiff because Plaintiff complained to Defendant about the race, sex, disability and pregnancy discrimination that Plaintiff experienced while employed with Defendant, in violation of the Texas Commission on Human Rights Act, Texas Labor Code §21.055.

42. Defendant's behavior was motivated by discriminatory motives. Because of Defendant's discriminatory and retaliatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violation of the Texas Labor Code, and for which Defendant is liable.

### JURY REQUEST

43. Plaintiff hereby requests a trial by jury and tenders the appropriate fee.

## RELIEF REQUESTED

Aqilla Hogan-Rogers respectfully requests that McDonald's Corporation be summoned to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Aqilla Hogan-Rogers against it for the following:

a. All damages that Plaintiff may be entitled to pursuant to this Original Complaint (or any amendment thereto), including, but not limited to, back pay wage, future wages, upgrading, and compensation for benefits not received;

b. Compensatory damages, including, but not limited to, emotional distress;

c. Punitive damages;

d. Attorneys' fees;

e. Pre-judgement interest;

f. Post-judgement interest;

g. Court costs and fees; and

h. Such other and further relief, at law or in equity, that Plaintiff may be entitled to pursuant to this Original Complaint (or any proper amendments thereto).

Dated December 2, 2019

Respectfully submitted this day,

**STEPHENS REED & ARMSTRONG, PLLC**

By: */s/ Marrick Armstrong*
_____
**Marrick Armstrong**
Attorney-in-Charge
State Bar No.: 24057695
Email: marrick@srapllc.com
**Amber Boyd**
State Bar No.: 24078250
E-mail: amber@srapllc.com
12234 Shadow Creek Pkwy, Suite 1104
Pearland, Texas 77584
Telephone: (281) 489-3934
Facsimile: (281) 657-7050

**ATTORNEYS FOR PLAINTIFF**